UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CIVIL ACTION NO. 2011-689 (WOB-SKB)

ANN K. FOUST                                    PLAINTIFF

VS.                    **MEMORANDUM OPINION AND ORDER**

BUTLER COUNTY, ET AL.                           DEFENDANTS

This matter is before the Court on Defendants' motion for summary judgment (Doc. 23).

The Court heard oral argument on this motion on January 10, 2013, and thereafter took it under submission (Doc. 35).

Having reviewed this matter further, the Court now issues the following Memorandum Opinion and Order.

## Factual and Procedural Background

In 2005, Plaintiff Ann Foust was hired by Kay Rogers, the Butler County Auditor at that time, to work as a Tax Accounting Specialist in the Auditor's Office. *See* Deposition of Ann Foust (Foust Depo.) at 7.  The Auditor's Office is responsible for processing and distributing funds which are first collected by the Treasurer's Office through taxes on real estate in Butler County. *Id*. at 14-16.  Rogers hired Plaintiff to assist Michael Tilton, the Real Estate Director at that time, in his tax accounting duties by providing quality control assistance. *Id*. at 10-11.

In 2008, Plaintiff became a Tax Accounting Specialist II when new job descriptions were created. *See* Deposition of Michael Tilton (Tilton Depo.) at 97-98. Plaintiff admits that her duties developed significantly throughout her tenure and that the Tax Accounting Specialist II job description does not adequately cover all of her duties.[1] *See* Foust Depo. at 36-38. Throughout her employment, Plaintiff continually assumed duties from both Mike Tilton and fellow employee, Rick Law. *See* Tilton Depo. at 19, 35-37.

In April of 2008, Roger Reynolds was appointed as the Butler County Auditor. *See* Deposition of Roger Reynolds (Reynolds Depo.) at 6-7. Reynolds testified that when he took office he did not review or consider the previous records of his employees. *Id*. at 17. Reynolds stated that he wanted all employees to have a chance to prove themselves on their own merits, rather than on any prior political or social connections. *Id*. Reynolds stated that he only reviewed a resume of each employee so he could ascertain each employee's skill set. *Id*. at 18.

---

[1]Generally, Plaintiff ran abstracts, end-of-year reports, settlement agendas, and performed tax rate updates, all for the purpose of reconciling money collected with funds to be distributed. *See* Foust Depo. at 11-16. Plaintiff also wrote and modified basic computer scripts to extract information from the iasWorld program, which is a program for managing the property tax life cycle. *Id*. at 21-24, 32-33.

Beginning in January of 2009, Plaintiff was directly supervised by Julie Joyce-Smith, but primarily trained by Tilton. *See* Deposition of Julie Joyce-Smith (Joyce-Smith Depo.) at 11-12; Tilton Depo. at 19-20. Defendants assert that in the following year Plaintiff committed three errors which ultimately resulted in her termination. *See* Doc. 23 at p. 1. Although she partially blames a lack of support and time for these errors, Plaintiff does not dispute that she committed said errors. *See* Foust Depo. at 103-106.

**A. The Edgewood Advancement Error**

The Ohio Revised Code limits the advancement of school levy funds from a county auditor to school districts to 75% of currently collected funds. *Id*. at 54. In September of 2009, Plaintiff mistakenly advanced to the Edgewood School District more than 75% of the funds from the district's school levy. *Id*. at 53-54. Defendants were able to reconcile this amount by deducting the overpayment from the next advancement that Edgewood was due in March of 2010. *Id*. at 56-57.

However, the overpayment resulted in a cash shortage at the Auditor's Office for the period between advancements. *Id*. at 57. Tilton testified that he discussed with Plaintiff the impact errors of this nature would have on the budgets for the County and the school district. *See* Tilton Depo. at 24-26. Plaintiff remembers taking note of the circumstances so she

3

could ensure this error did not recur.  *See* Foust Depo. at 58-59.

### B. The House Bill 66 Fees Error

When Ohio eliminated personal property taxes, House Bill 66 allowed the Auditor and Treasurer to recoup these funds on an interim basis through operating fees retained prior to distribution to tax paying entities.  *Id*. at 67-68.  In 2009, Plaintiff was assigned the duty of calculating these fees.  *See* Tilton Depo. at 39; Foust Depo. at 63-64.  When a question arose as to the abnormally low revenues from the Real Estate division, Tilton reviewed the reconciliation of fees and discovered that Plaintiff had erred.  *See* Tilton Depo. Vol. 1 at 27-29.

Rather than subtracting the House Bill 66 fees from the amount to be distributed, Plaintiff added the amount that should have been retained under House Bill 66 to the amount to be distributed.  *Id*. at 31-33.  Plaintiff admitted that she erred by entering a "+" where there should have been a "-" into the formula on the spreadsheet.  *See* Foust Depo. at 63-68.  This error resulted in a $339,965.72 deficit to the Real Estate Department of the Auditor's Office and a $531,741.24 deficit to the Butler County General Fund.  *Id*. at Ex. 25.  Ultimately, Tilton figured out a way to recoup the money within the same fiscal year.  *Id*. at 75-78; *see* Tilton Depo. at 107-109.

4

On Plaintiff's 2009 performance review, Joyce-Smith indicated that Plaintiff "met expectations" in the majority of the categories, but that she only "partially met expectations" in two categories involving error-free work. *Id*. at Ex. 22. Specifically, Joyce-Smith noted on the review that "[t]wo separate reporting errors have called into question . . . the internal controls employed by Ann." *Id*.

Plaintiff denies that Joyce-Smith ever told her there would be "dire consequences" for further similar errors, but Plaintiff admits that Joyce-Smith had to "keep [her] off the ledge" after the House Bill 66 fee error. *Id*. at 99, Ex. 14. Although Joyce-Smith considered her discussion with Plaintiff to constitute a verbal warning (*see* Joyce-Smith Depo. at 21, 23), Plaintiff denies that Joyce-Smith ever mentioned disciplinary action. *See* Foust Depo. at 100. Regardless, Reynolds testified that after this incident he was unsure about Plaintiff's ability to complete basic accounting functions. *See* Reynolds Depo. at 50-52.

**C. Spreadsheet Labeling Error**

On January 22, 2010, Plaintiff was given the duty of calculating and updating an electronic spreadsheet used to assist the Treasurer's Office in creating the tax bills.[2] *See*

---

[2]According to Plaintiff, the Treasurer's Office produces and mails the tax bills, but the Auditor's Office is responsible for

Foust Depo. at 80-81.  While performing this task, Plaintiff mistakenly switched two labels on the electronic spreadsheet, causing the tax allocated to Mental Health and Mental Retardation on the tax bills to be reversed.  *Id*. at 94-95. Ultimately, this issue was brought to the attention of the Auditor's Office by taxpayers who called to complain about the incorrect tax distributions on their tax bills.  *Id*. at 94.

Prior to the day she was assigned this task, Plaintiff had not been responsible for calculating the tax distributions to the different agencies.  *Id*. at 81-82.  Additionally, the spreadsheet was reviewed by Joyce-Smith and she did not catch the error.  *See* Joyce-Smith Depo. at Ex. 22.  In fact, Tilton testified that he had a discussion with Joyce-Smith about what processes should be in place going forward so that an error of this nature did not recur.  *See* Tilton Depo. at 50-51.  However, it is undisputed that Plaintiff was the individual who mistakenly switched the labels on the tax distribution spreadsheet.  *See* Foust Depo. at Ex. 20.

**D. Plaintiff's Termination**

On March 2, 2010, Plaintiff received notice of a pre-disciplinary hearing to be held on March 4, 2010.  *Id* at Ex. 24.

---

the distribution calculations.  *See* Foust Depo. at 80-81.  The distribution calculation essentially provides a breakdown of the percentages of the total taxes collected to be distributed to the different entities.  *Id*. at 81.

The notice stated that the charge to be considered was for
"[i]nverting the names of Mental Health Levy with the Mental
Health and Retardation levies on the tax bill distribution."
*Id.*  On the day of the hearing, Plaintiff received another memo
outlining the Edgewood advance error and the House Bill 66 fee
error.  *Id.* at Ex. 25.  Although Plaintiff cited a lack of
support and time as reasons why the errors were committed, she
did not dispute that these errors were attributable to her.  *Id.*
at 103-106.

Ultimately, the final decision to terminate Plaintiff was
made by the Butler County Auditor, Roger Reynolds.  *See* Doc. 30
at pg. 15; Reynolds Depo. at 56; Joyce-Smith Depo. at 50.
Reynolds testified that he felt he could no longer rely on
Plaintiff to complete the duties required for her position.  *See*
Reynolds Depo. at 56.  Reynolds testified that he looked into
placing Plaintiff in a different capacity, but he did not think
she would be a good fit in any of the open positions at that
time.  *Id.* at 58.  Plaintiff was terminated on April 13, 2010.
*Id.* at Ex. 28.

On July 15, 2011, after exhausting her administrative
remedies, Plaintiff brought an action in this Court against
Butler County and the Butler County Auditor's Office for gender
discrimination under Title VII of the Civil Rights Act ("Title
VII"), 42 U.S.C. § 2000(e), and Ohio Revised Code § 4112.  *See*

Complaint at ¶¶ 4, 6.  Additionally, Plaintiff brought a claim for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et. seq., and Ohio Revised Code § 4112.02.  *Id.*

## ANALYSIS

### A. Plaintiff's Claim for Gender Discrimination Under Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e), and Ohio Revised Code § 4112.02.

Since Plaintiff has presented no direct evidence of gender discrimination under Title VII, her claim will be analyzed using the burden-shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 791 (1973).[3]  To establish a prima facie case of gender discrimination, Plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or a similarly situated non-protected employee was treated more favorably.  *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004).

If Plaintiff can make this showing, the burden of production shifts to Defendants to present a legitimate, non-discriminatory basis for the adverse employment decision. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006).

---

[3]Claims of gender discrimination under R.C. 4112.02 are analyzed under the same framework as Title VII.  *See, e.g., Cincinnati Bar Ass'n v. Young*, 731 N.E.2d 631, 639 (Ohio 2009).

8

If Defendants can present a legitimate, non-discriminatory basis for the adverse employment decision, then the burden shifts back to Plaintiff to show that the Defendants' legitimate, non-discriminatory reason was merely a pretext for discrimination. *Id.* at 706-707.

### 1. Similarly-Situated Employee

Defendants concede that Plaintiff can establish the first three elements of the prima facie case, but they assert that Plaintiff cannot establish that any similarly situated, non-protected employee was treated more favorably. *See* Doc. 23 at p. 11.

In order to establish that two people are similarly situated, "a plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment." *Martinez v. Cracker Barrel Old Country Store, Inc.*, No. 11-2189, 2013 WL 115587, at *5 (6th Cir. Jan. 10, 2013) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998)) (internal quotation marks omitted). Instead, "the plaintiff [must] demonstrate that he or she is similarly situated to the [claimed comparator] in all relevant respects." *Id*. (citing *Wright,* 455 F.3d at 709-10 (further citation omitted)).

"In the disciplinary context, the Sixth Circuit has held that to be found similarly situated, the plaintiff and [her] proposed comparator must have engaged in acts of comparable

seriousness." *Id.* (citation and quotation omitted).  When making this determination, "a court must look to certain factors, such as whether the individuals have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  *Id.* (citing *Wright,* 455 F.3d at 710) (citation and internal quotations omitted).

Thus, to establish a prima facie case of gender discrimination, Plaintiff must point to at least one similar male employee guilty of conduct of "comparable seriousness" to the conduct for which she was fired, but whom management treated more leniently.  *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992).  In her responsive memorandum, Plaintiff identifies only Rick Law as a comparator in regard to her gender discrimination claim.[4]  *See* Doc. 30 at pp. 1, 15-16.

---

[4]Plaintiff identifies a number of other alleged comparators in her interrogatories, *see* Foust Depo. at Ex. 32, but she has abandoned those comparisons as she does not mention them as comparators in her responsive memorandum.  *See* Doc. 30. However, to the extent that Plaintiff still relies on these individuals as comparators, this assertion must fail.  It is undisputed that the alleged conduct of comparable seriousness committed by three of the individuals (Brad Kuntz, Harry Steger, and Dale Harris) occurred prior to Roger Reynolds' appointment as Butler County Auditor.  *Id.* at 116.  Since Reynolds had no role in disciplining these individuals, they cannot be considered Plaintiff's comparators.  Additionally, Brian Stewart and Steve Creach were allegedly negligent in their operation of a county vehicle.  *See* Tilton Depo. at 42-43.  Also, Stewart and

Defendants do not dispute that Rick Law was continually absent from work, that he received below-average performance evaluations in 2008[5] and 2009,[6] or that he was found under the influence of alcohol at work on one occasion.[7]  *See* Doc. 23 at

---

Creach reported to Bob Routson, who was not in Plaintiff's chain of command.  *See* Foust Depo. at 149-50.  Moreover, Julie Joyce-Smith and Hailey Long are both in the same protected class in regard to Plaintiff's gender discrimination claim.  Accordingly, none of these individuals could be considered as a comparator to Plaintiff.

[5]Rick Law's 2008 performance review includes the following criticisms:
- "[H]e could be more proactive in making better use of his time during slow periods."
- "The quality of Rick's work has declined in this last year. There have been several issues regarding incomplete and incorrect paper work."
- "Documentation organization and maintenance has become overwhelming for Rick.  He is taking steps to get the paper work organized."

*See* Joyce-Smith Depo. at Ex. 1.

[6]Rick Law's 2009 performance evaluations involve the following criticisms:
- "Rick needs to rely less on prompting from his superiors in completing long term or open ended assignments."
- "Rick still needs to improve on making better use of his free time."

However, Law's 2009 performance evaluation also states that he had made "a great deal of progress" in three different aspects of his performance.  *See* Joyce-Smith Depo. at Ex. 1.

[7]Plaintiff also references two other incidents involving Law that took place before Reynolds was appointed as the Butler County Auditor in 2008: Law's use of a racial epithet and an incident where Law left work at lunch and did not return.  *See* Doc. 30 at pp. 9-10.  Reynolds testified that he did not review employee files, and considered each employee to have a clean slate when he took office.  *See* Reynolds Depo. at 14-17.  Since there is no dispute that Reynolds made the decision to terminate Plaintiff,

pp. 12-13.  While Defendants suspended Law for 30 days after finding him intoxicated, Defendants did not terminate Law for these actions.  *See* Joyce-Smith Depo. at Ex. 1.  After this incident, Law admitted an alcohol addiction and checked himself into a treatment center.  *See* Doc. 23 at pp. 12-13.  After treatment, Law's performance began to improve, but he still had issues with attendance.  *See* Joyce-Smith Depo. at Ex. 1.

Because of Law's addiction, Reynolds continued to try to work with Law even though his performance did not meet all expectations and he continued to have attendance issues.  *See* Reynolds Depo. at 66-67.  Eventually, Law was terminated in 2011 for using vulgar, sexually-related language amongst the office staff.  *Id*. at 27-28.  Reynolds asserts that Law had clearly relapsed when he made this statement.  *Id*. at 29.  Defendants argue that Law cannot be considered a comparator with Plaintiff because Law's conduct was not of comparable seriousness with Plaintiff's errors.[8]

Although arriving at work intoxicated is certainly serious conduct, Plaintiff cannot establish that Law's conduct was of a

---

(*See* Doc. 30 at p. 15; Reynolds Depo. at 56; Joyce-Smith Depo. at 50), these prior incidents would not be relevant to establishing Law as a comparator to Plaintiff.  Moreover, these two incidents, although serious, are not comparable to the three errors committed by Plaintiff.

[8]Defendants concede that Plaintiff and Rick Law had sufficiently overlapping responsibilities such that Plaintiff could meet that part of the similarly-situated test.  *See* Doc. 33 at p. 9.

comparable seriousness with her own. "Plaintiff's allegations regarding [an]other employee not being fired for different, but what she subjectively believes to be more serious, misconduct simply does not satisfy that element." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Plaintiff next points to the fact that Law received "several significantly less favorable performance reviews than the one Foust received after her first two issues." *See* Doc. 30 at p. 16. Plaintiff asserts that a jury could infer from these comparative performance reviews that Plaintiff's errors were not significant and reject Defendants' assertion that Plaintiff's errors were more serious than Law's errors. *Id.*

However, the fact that Law's performance reviews were more negative than Plaintiff's likely indicates that both of these individuals engaged in unacceptable conduct, but it does not establish that their conduct was comparable. In fact, the deficiencies in Law's and Plaintiff's conduct are not comparable. Plaintiff does not dispute that she committed three errors which were directly related to the overall function of the Auditor's Office. Foust Depo. at 58-59, 100, 144. Although Plaintiff asserts that a lack of support and time contributed to her errors, she does not dispute that her errors were unacceptable. *Id.* at 103-106.

13

On the other hand, Rick Law's issues primarily revolved around his excessive absenteeism and the one incident when he arrived at work intoxicated. *See* Reynolds Depo. at 61-62, 69. While Law's 2008 performance evaluation did indicate that he had "several issues with incomplete or incorrect paperwork," his performance review in 2009 indicated that he had "made a great deal of progress in this area throughout [the] year." *See* Joyce-Smith Depo. at Ex. 1.  Plaintiff has offered no evidence that after 2008, when Roger Reynolds was appointed as the Auditor, Rick Law had committed any errors similar in type or seriousness to Foust's three errors.

Additionally, although Plaintiff continually cites to the negative nature of Law's performance reviews as compared to Foust's performance reviews, Plaintiff has not produced any evidence of actual instances where Law committed errors akin to those committed by Plaintiff. *See Mitchell*, 964 F.2d at 583 (holding that plaintiff could not establish a prima facie discrimination claim, in part, because plaintiff did not produce sufficient information about her alleged comparator's conduct such that the Court could determine if that conduct was of a comparable seriousness).

Therefore, a reasonable jury could not conclude that Plaintiff and Rick Law were similarly situated in all relevant aspects.  More specifically, the errors committed by Plaintiff

and Rick Law were not of comparable seriousness, and, thus, there were legitimate reasons why Defendants would treat them differently. Accordingly, Plaintiff cannot establish a prima facie case of gender discrimination.

### 2. Pretext for Discrimination

However, even if this Court were to find that Plaintiff could establish Rick Law as a comparator, Defendants would still be entitled to summary judgment as Plaintiff cannot show that Defendants' legitimate, non-discriminatory reason for her termination was a pretext for gender discrimination.[9]

In order to establish pretext, Plaintiff must establish that the Defendants' legitimate, non-discriminatory reason for her discharge: (1) had no basis in fact, (2) did not actually motivate its action, or (3) was insufficient to motivate its action. *Sander v. Gray Television Group, Inc.*, 478 F. App'x 256, 265 (6th Cir. 2012) (quoting *Hedrick v. W. Reserve Care Sys.,* 355 F.3d 444, 460 (6th Cir. 2004)). Plaintiff asserts, alternatively, that Defendants' asserted reason for terminating her was insufficient to motivate termination or it did not motivate the termination decision. *See* Doc. 30 at p. 17.

---

[9]Basing the decision to terminate Plaintiff Foust on her three errors, Defendants have clearly proffered a legitimate, non-discriminatory reason for Foust's termination. Thus, the burden shifts back to Plaintiff Foust to establish that the reason for her termination was a pretext for discrimination.

15

First, Plaintiff asserts that the disparate treatment of her and Rick Law is sufficient itself to establish that Defendants' legitimate, non-discriminatory reason was insufficient to motivate her termination. *See* Doc. 30 at pp. 18-19. However, as stated previously, Plaintiff cannot establish that she was similarly situated with Rick Law as their conduct was not of comparable seriousness.

A reasonable jury may believe that Reynolds' leniency towards Law was unfair. However, the fact that Reynolds may have been more lenient towards Law, an individual with a recognized alcohol addiction, does not lend itself to a finding of pretext. "Time and again we have emphasized that [o]ur role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments." *Corell v. CSX Transp., Inc.*, 378 F. App'x 496, 505 (6th Cir. 2010) (quoting *Risch v. Royal Oak Police Dept.,* 581 F.3d 383, 399 (6th Cir. 2009) (internal citation and quotation marks omitted) (Griffin, J. dissenting)).

By Plaintiff's own admission, her errors were unacceptable. *See* Foust Depo. at 103-105. Moreover, the fact that Plaintiff's errors were directly related to the overall function of the Auditor's Office supports the legitimacy of a termination on that basis. Thus, Plaintiff has not raised a triable issue as

to whether Defendants' legitimate, non-discriminatory reason was insufficient to motivate her termination.

Next, Plaintiff asserts that Defendants' legitimate, non-discriminatory reason did not actually motivate her termination. *See* Doc. 30 at pp. 19-20. Under this theory, a Plaintiff must show "that the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext, or cover-up." *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 503 (6th Cir. 2007) (citation omitted).

Plaintiff asserts that there is a "clear dispute of fact regarding the significance of the errors for which Defendants claim they terminated Foust." *See* Doc. 30 at p. 19. On this point, Plaintiff asserts that there is a dispute as to whether Joyce-Smith ever told Plaintiff that there would be "dire consequences" for further errors. *Id.*

Construing all reasonable inferences in favor of the Plaintiff, this Court must conclude that Joyce-Smith never gave this warning. Plaintiff asserts that a jury could conclude that Joyce-Smith claimed to have given this warning "in order to manufacture support for a discriminatory termination." *Id.* Further, Plaintiff asserts that a jury could conclude that, since the Auditor's Office never actually lost any money due to

17

her errors, these errors were not the real reason for her termination.[10]  *Id.* at 20.

Both of Plaintiff's arguments fail.  Even assuming, as this Court must, that Joyce-Smith did not make the "dire consequences" comment, no reasonable jury could use this factual dispute as a basis to find that the Defendants' legitimate, non-discriminatory reason for Plaintiff's termination was a pretext for gender discrimination.  Plaintiff was well aware of the seriousness of her errors and the potential significance that these errors would have had on the Auditor's Office had it not been able to recoup the money.  *See* Foust Depo. at 105, 112-113, Ex. 14.

Similarly, the fact that Defendants were able to recoup the losses incurred due to Plaintiff's errors is not a basis upon which a reasonable jury could conclude that Defendants' reason for terminating Plaintiff was pretextual.  In fact, Plaintiff's argument that her errors "cost Defendants nothing" is flawed. *See* Doc. 30 at p. 20.

---

[10]Plaintiff also indicates that there is a discrepancy between the Defendants' EEOC position statement and Mike Tilton's testimony regarding Rick Law's employment duties.  *See* Doc. 30 at p. 20.  However, Tilton's testimony that Rick Law was involved in preparing settlements and advancements is not in direct conflict with Defendants' EEOC position statement that Law was never *solely* responsible for preparing settlements and advancements.  *See* Doc. 30 at Ex. 1; Tilton Depo. at 35-37 (emphasis added).  Also, Tilton's testimony that Law was never involved in end-of-year processes is supported, rather than contradicted, by Defendants' EEOC position statement.  *Id.*

The Auditor's Office assuredly had to expend additional resources correcting these errors.  Additionally, the fact that the Auditor's Office was able to avert these losses does not change the fact that the Defendants had lost faith in Plaintiff's ability to competently fulfill her duties. Moreover, Reynolds, as an elected official, would certainly be sensitive to any potential disrepute which may be brought upon himself or the Auditor's Office as a result of these errors.

Furthermore, as the Supreme Court explains, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 153 (2000).  There is no dispute that Plaintiff made the errors in question, nor has she suggested that the Defendants gave her inconsistent reasons for her termination.  Plaintiff has come forward with no evidence of a discriminatory animus which would support a finding of pretext.

Since Plaintiff has not produced evidence from which a reasonable jury could doubt that she was fired because of her three errors, summary judgment is appropriate on her disparate treatment claim.  *Abdulnour*, 502 F.3d at 504. ("As the Supreme Court noted in *Reeves,* summary judgment is appropriate, as in this case, if the plaintiff 'only created a weak issue of fact

19

as to whether the defendant's reason was untrue' and there is ample evidence to support the employer's position.'") (quoting *Reeves*, 530 U.S. at 148).

### B. Plaintiff's Claim for Age Discrimination Under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et. seq., and Ohio Revised Code § 4112.02.

Plaintiff, age 53 at the time of her discharge, also alleges that she was terminated because of her age in violation of the ADEA and R.C. 4112.02.[11]  The *McDonnell Douglas* framework is still applicable to ADEA claims based on circumstantial evidence.  *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009).  Again, in regard to Plaintiff's prima facie case, the Defendants only dispute that Plaintiff was treated less favorably than a similarly-situated, significantly younger employee.  *See* Doc. 23 at pg. 17-18.

#### 1. Similarly-Situated Employee

"The plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the *relevant* aspects."  *Knox v. Neaton Auto Products Mfg., Inc.*, 375 F.3d 451, 458 (6th Cir. 2004) (citing *Ercegovich*, 154 F.3d at 353) (emphasis in original).  In regard to this element of her prima facie case, Plaintiff asserts that she is similarly

---

[11]Ohio age discrimination claims are analyzed in accordance with the ADEA.  *Clark v. City of Dublin*, 178 F. App'x 522, 525 (6th Cir. 2006).

situated to her forty-four (44) year-old former supervisor, Julie Joyce-Smith.  *See* Doc. 30 at pp. 16-17.

Plaintiff identifies two situations in which she alleges that Joyce-Smith erred, but was not reprimanded by the Auditor's Office.  *Id*.  First, Plaintiff points to the fact that Joyce-Smith failed to catch Plaintiff's error in switching the labels on the tax bills.  *Id*.  Second, Plaintiff points to an incident in March of 2010 when Joyce-Smith made a mistake in estimating the levy costs for a proposed Middletown City Schools levy.  *Id*.

Even construing all reasonable inferences in favor of Plaintiff, as this Court must, Plaintiff and Joyce-Smith are not similarly situated as their errors are not similar with respect to severity or frequency.  *See Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001) (finding that employees were not similarly situated where the severity and frequency of the employees' performance errors differed); *Clayton v. Meijer, Inc.*, 281 F.3d 605, 612 (6th Cir. 2002) (holding that an "employer's more severe treatment of more egregious circumstances simply cannot give rise to an inference which would support the establishment of a prima facie case of discrimination").

In regard to Plaintiff's labeling error, Joyce-Smith reviewed the tax bill spreadsheet and failed to catch Plaintiff's error.  *See* Tilton Depo. at 50-51.  However, it is

21

undisputed that the error was created by Plaintiff. *See* Foust
Depo. at 140-143.

Joyce-Smith's failure to catch the error is not of the same
severity as Plaintiff actually making the error. While Tilton
testified that he advised Joyce-Smith that controls should be in
place to prevent an error like this from recurring, *see* Tilton
Depo. at 120, Defendants' more severe treatment of a subordinate
who created an error as compared to a manager who failed to
catch the error "cannot give rise to an inference which would
support the establishment of a prima facie case of
discrimination." *See Clayton,* 281 F.3d at 612.

Next, Plaintiff cites to an error made by Joyce-Smith
regarding an estimate for levy costs for a proposed Middletown
City Schools levy. *See* Doc. 30 at pp. 16-17. In March of 2010,
Joyce-Smith used an incorrect document which caused an erroneous
millage estimate to be submitted on a levy certificate to
Middletown Schools. *See* Joyce-Smith Depo. at 150. The error
was caught and rectified prior to the ballots being printed, so
there was no monetary fallout from the error. *Id.* However,
this error was the subject of an article published by the
Middletown Journal later that month. *Id*. at Ex. 40. Joyce-
Smith received a verbal and written reprimand for this error.
*Id*. at 151.

Although a reasonable jury could find that this one error is similar in nature to Plaintiff's three errors, Plaintiff has failed to establish that Joyce-Smith committed errors as frequently as Plaintiff.  Additionally, the reprimand Joyce-Smith received for this error seems to be stricter discipline than Plaintiff received for either of her first two errors.

Moreover, although not dispositive, the fact that Joyce-Smith was Plaintiff's supervisor also weighs heavily against a finding that these two individuals are similarly situated in all relevant aspects.  *See Henry v. Delta Air Lines, Inc.*, No. 2:10-CV-00009-WOB, 2011 WL 3444089, at *9 (E.D. Ky. Aug. 8, 2011) (finding that plaintiff and her alleged comparator were not similarly situated, in part, because the alleged comparator was plaintiff's supervisor and there were legitimate reasons why the defendant would treat them differently); *see also Palmer v. Potter*, 97 F. App'x 522, 525 (6th Cir. 2004) (finding that the plaintiff could not satisfy the similarly-situated element, in part, because an employer is justified in disciplining individuals at elevated positions differently than their junior colleagues).

Additionally, there is no evidence that Joyce-Smith and Plaintiff performed the same duties at the Auditor's Office. Joyce-Smith took over some of Plaintiff's duties only after Plaintiff was terminated.  *See* Joyce-Smith Depo. at 48-49.

23

Again, the dissimilarity of duties weighs against a finding that they are similarly situated in all relevant aspects.

Therefore, a reasonable jury could not conclude that Plaintiff and Julie Joyce-Smith were similarly situated in all relevant aspects.  Thus, Plaintiff cannot establish a prima facie case of age discrimination.

### 2. Pretext for Age Discrimination

When arguing that that Defendants' legitimate, non-discriminatory reason for her termination was a pretext for age discrimination, Plaintiff relies on the same arguments discussed above in reference to her gender discrimination claim. *See* Doc. 30 at pp. 17-20.  As discussed, Plaintiff has not produced sufficient evidence from which a reasonable jury could doubt that she was fired because of her three errors.  Thus, even assuming, *arguendo*, that Plaintiff could establish a prima facie case of age discrimination, she could not establish that Defendants' legitimate, non-discriminatory reason for her termination was a pretext for age discrimination.

Therefore, having reviewed this matter, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** as follows:

1.   That Defendant's motion for summary judgment (Doc. 23) be, and it is, hereby **GRANTED**; and

24

2.    That A separate judgment shall enter concurrently herewith.

This 25th day of January, 2013.



**Signed By:**

*William O. Bertelsman*  WOB

**United States District Judge**